# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**DENNIS THOMPSON**                                                                 **PLAINTIFF**

**V.**                                                              **NO. 4:14-CV-00068-DMB-JMV**

**JOHN BEASLEY, Individually and in his
Official Capacity as Jail Administrator;
CHARLES JONES, Individually and in His
Official Capacity as Sheriff of Coahoma
County; and COAHOMA COUNTY**                                             **DEFENDANTS**


## ORDER GRANTING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This removed action is brought by Plaintiff Dennis Thompson against Defendants Coahoma County; John Beasley, a Jail Administrator in Coahoma County; and Charles Jones, Sheriff of Coahoma County. Doc. #2. Plaintiff alleges injuries arising from a physical altercation with Beasley while Plaintiff was incarcerated at a Coahoma County jail. *Id*. at ¶¶ 11–26. Before the Court is Defendants' motion for summary judgment. Doc. #15. For the reasons below, summary judgment is granted in part and denied in part.

## I
## Summary Judgment Standard

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 22–23 (1986)). To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Norwegian Bulk Transp. A/S,* 520 F.3d at 411–12 (internal quotation

marks omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

"If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.,* 639 F.3d 186, 191–92 (5th Cir. 2011) (citation and internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

## II
## Deemed Admissions

On June 19, 2014, counsel for Beasley served upon Plaintiff's attorney "Defendant John Beasley's First Set of Interrogatories, Requests for Production of Documents and Things, and Requests for Admissions to Plaintiff." Doc. #7. In their briefs supporting their motion for summary judgment, Defendants represent that "said discovery remains unanswered … and by operation of law, the admission requests have been deemed admitted." Doc. #16 at 4. Plaintiff has failed to respond to the representation and the argument that the requests are deemed admitted.

Pursuant to Rule 36(a)(1) of the Federal Rules of Civil Procedure, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)[1] relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1) (footnote added). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Under the language of this rule, a "defendant's failure to timely respond or object to the request for admissions results in the *automatic admission* of the matters requested." *Directv, Inc. v. Price*, 403 F.Supp.2d 537, 540 (M.D. La. 2005) (emphasis added). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Where, as here, "the requests for admissions concern an essential issue, the failure to respond to requests for admission can lead to a grant of summary judgment against the non-responding party." *Murrell v. Casterline*, 307 Fed. App'x 778, 780 (5th Cir. 2008) (citing *Dukes v. S. Carolina Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir. 1985); *see also U.S. v. Akhtar*, 95 F.Supp.2d 668, 672 (S.D. Tex. 1999) ("[D]eemed admissions can serve as the basis for summary judgment."); *see also Financial Cas. & Sur., Inc. v. Parker*, No H-14-0360, 2015 WL 3466221, at *3 (S.D. Tex. June 1, 2015) (collecting authorities). However, "only proper requests for

---

[1] Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)

admission will be deemed admitted." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F.Supp.2d 426, 433 (S.D.N.Y. 2012). Accordingly, for a request to be deemed admitted for the purpose of summary judgment, it must have been a request to admit facts, the application of law to fact, opinions about facts or the application of law to fact, or the genuineness of a described document. *See* Fed. R. Civ. P. 36(a)(1).

There is no dispute that Beasley served Plaintiff with requests for admission on June 19, 2014, and that Plaintiff failed to serve a written answer or objection in response, either within the thirty days provided in the rule, or another time period set by this Court. Accordingly, except for those requests that fall outside the scope of Rule 36(a)(1), the contents of Beasley's first set of requests for admission were automatically admitted for purposes of this action.[2]

In his discovery requests, Beasley propounded twenty requests for admission, of which sixteen (numbers 1, 6–20) may be properly characterized as requests for admission of facts under Rule 36(a)(1). *See* Doc. #16-3 at 7–9. Such requests are deemed admitted and have been incorporated into the facts section below.

However, Beasley also propounded the following requests for admission that may be found to constitute legal conclusions falling outside the scope of Rule 36(a)(1):

2. Please admit that the Defendants are not liable and have no liability to Plaintiff for the incident which is the subject of this lawsuit.

3. Please admit that the sole proximate cause of Plaintiff's injuries or losses, if any, was his own negligent or intentional acts.

4. Please admit that Plaintiff was solely at fault for the incident which is the subject of this lawsuit.

---

[2] While the requests for admission were served only on behalf of Beasley, "if an admission results from a request it may be used by a party adverse to the party who made the admission as if it had appeared in a pleading." 8B Fed. Prac. & Proc. Civ. § 2264 (3d ed.). Accordingly, the deemed admissions are effective as to Coahoma County and Jones, as parties adverse to Thompson. *Id.*

5. Please admit that third parties were solely at fault for the incident which is the subject of this lawsuit.

*Id.* at 7–8.

While the rule allows a party to request an admission of "the application of law to fact," "[r]equests for purely legal conclusions … are generally not permitted." *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, __ F.Supp.3d __, 2015 WL 2208444, at *4 (D. Or. May 11, 2015) (collecting cases). Unfortunately "the distinction between the application of law to fact and a legal conclusion is not always easy to draw." *Id.* Indeed, in the absence of controlling circuit authority, lower courts have struggled to consistently apply the rule. *Compare First Options of Chicago, Inc. v. Wallenstein*, No. Civ. 92-5770, 1996 WL 729816, at *3 (E.D. Pa. Dec. 17, 1996) (request to admit that "From October 19, 1987 to October 31, 1987, Mr. Wallenstein owed a fiduciary duty to the creditors of MKI to protect corporate assets from wrongful distribution to Manuel Kaplan" was request for application of law to fact); and *Ransom v. U.S.*, 8 Cl. Ct. 646, 648 (1985) (request to admit that "by execution and delivery of the bid bond referred to in Request No. 33 above, there existed a privity of contract between plaintiffs, and each of them, and the Air Force" was request for application of law to fact); *with Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) ("determining whether a patent is valid would call for a legal conclusion although dependent on factual inquiries"); and *Playboy Enters., Inc. v. Welles*, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999) (request to admit that defendant was "public figure" as defined in Supreme Court case law was request for legal conclusion).

While the broader interpretation of "legal conclusion" exemplified by *Welles and Dell* seems to be the more prevalent approach,[3] it also appears contrary to the purposes of Rule 36, which are "to facilitate proof with respect to issues that cannot be eliminated from the case [and] *to narrow the issues by eliminating those that can be*." Notes of Advisory Committee on Rules, 1970 Amendment, 48 F.R.D. 485, 531–532 (1969) (emphasis added). Thus, the commentary to the rule cites with approval admissions related to certain legal issues, such as whether an employee acted within the scope of his employment, or that "the premises on which [an] accident occurred, were occupied or under the control of one of the defendants." *Id.* (internal quotation marks).

Where courts have attempted to fashion a workable framework for distinguishing proper from improper requests for admission, they have rightfully focused on the plain text of the Rule, which permit a request to admit the *application of law to fact*. Under this approach, a court will look to the request itself to determine whether the requesting party has "connect[ed] the legal propositions contained in its admissions requests with the specific facts and circumstances of the case." *See Vons Companies, Inc. v. U.S.*, 51 Fed. Cl. 1, 15 (2001), *modified on other grounds*, No. 00-234T, 2001 WL 1555306, at *1 (Fed. Cl. Nov. 30, 2001); *see also Petrunich v. Sun Bldg. Sys., Inc.*, No. 3:04-cv-2234, 2006 WL 2788208, at *5 (M.D. Pa. Sep. 26, 2006) ("[T]he request that Defendants admit that Mr. Petrunich "was discriminated because of his age" is improper. Although this request refers to a party in the case, there is no factual basis to derive the legal conclusion that Defendants discriminated against Mr. Petrunich because of his age. In the absence of how Defendants discriminated against Mr. Petrunich, the request is too abstract to be

---

[3] *See, e.g., Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) ("[D]etermining whether a patent is valid would call for a legal conclusion, although dependent on factual inquiries."); *see also Tobkin v. The Florida Bar*, 509 B.R. 731, 733–34 (S.D. Fla. 2014) (request for admission that Florida Bar Association was not governmental "entity" required conclusion of law).

an application of the law to the facts of the case.").  Upon consideration, the Court concludes that

the factual inquiry approach articulated in *Vons Companies* and *Petrunich* is most consistent

with the language and purpose of Rule 36.  Accordingly, for a legally-related request to be

deemed admitted in this case, it must connect the relevant legal proposition to specific facts and

circumstances of the case.

Here, none of the legal propositions included in requests for admission 2-5 seek to

establish a connection between the proposition and the specific facts and circumstances of the

case.  Accordingly, like the requests in *Petrunich*, Beasley's requests contain no factual basis to

derive the proffered propositions and, therefore, such requests must be deemed improper legal

conclusions and not admitted for the purpose of this litigation.

### III
### Relevant Facts

Considering the factual record, including the properly deemed admissions, in the light

most favorable to Plaintiff, the Court finds:

On October 30, 2012, at the Coahoma County Jail ("Jail"), two inmates (Plaintiff and

Joseph Davis) assaulted Frederick Lewis, another inmate, in the "H-Pod" section of the facility.

Doc. #16-1 at ¶ 2; Doc. #16-2.  Although Jail policy required that all inmates involved in

physical altercations, except those acting in self-defense, were to be placed on lockdown[4] status

pending an investigation, only Lewis was placed in confinement, although he was later returned

to the jail population.  Doc. #16-1 at ¶ 2; Doc. #16-2.

The following day, October 31, 2012, Defendant Beasley reported to work at the Jail and

learned of the assault.  Doc. #16-1 at ¶ 2.  Upon arriving at the Jail, Jailer Glenda Johnson, an

eye witness to the fight, advised Beasley "that the inmates were not fighting in self defense."  *Id.*

---

[4] The parties use the spelling "lock down."  *See* Doc. #16 at 2; Doc. #2 at ¶¶ 28, 39.  The Court uses the dictionary spelling.  *See* Black's Law Dictionary (10th ed. 2014), lockdown.

Based on Johnson's assessment, Beasley "determined that all [three] inmates should have been on lock down until an investigation was completed." *Id.*

During the course of his investigation, Beasley instructed an "Officer Jackson … to tell … Thompson and Lewis to pack up their property as they would be transferred to lock down because of the fight with … Davis."[5]  Doc. #16-1 at ¶ 3.  Jackson went to H-Pod to inform the two inmates of the move.  *Id.*  Both Lewis and Plaintiff refused to comply with Jackson's order.[6] *Id.*  After the initial refusal, Beasley advised officers in dispatch to call for deputy assistance. *Id.*; Doc. #16-3 at ¶ 7.  The call for assistance was answered by Deputies Herbert Thomas and Myett Dawson.  Doc. #16-1 at ¶ 3.  When Thomas and Dawson arrived on the scene, Beasley moved to "Pod Control to monitor the situation."  *Id.*

From Pod Control, Beasley "could repeatedly hear the deputies telling both inmates to pack up their property and leave H-Pod, but both inmates refused to comply.  Doc. #16-1 at ¶ 3; Doc. #16-3 at ¶ 8.  At approximately this time, Lieutenant Elmore, another Jail employee, reported to work.  Doc. #16-1 at ¶ 3.  Elmore and Beasley entered H-Pod to assist Thomas, Dawson, and Jackson.  *Id.*  When Beasley re-entered H-Pod, Plaintiff "became loud, disruptive, and started making verbal threats."  *Id.*; Doc. #16-3 at ¶ 10.  In the process, Plaintiff refused to comply with "repeated … verbal commands" to leave his cell.  Doc. #16-1 at ¶ 3.

Following Plaintiff's repeated refusals, Beasley "took [Plaintiff] to the floor."  *Id.*; Doc. #16-3 at ¶ 11.  While on the ground, Plaintiff continued to struggle and was eventually handcuffed.  Doc. #16-1 at ¶ 4.  After being handcuffed, Plaintiff briefly stopped struggling, but

---

[5] Although Beasley's affidavit states that his original instruction pertained to Lewis, other references to the encounter refer to Davis.  See Doc. #16-1 at ¶ 3.

[6] Because other references in Beasley's affidavit also refer to Davis regarding Beasley's instruction to Officer Jackson, *see* note 5, *supra*; it is unclear whether Lewis, Davis, or both refused to travel to lockdown.  However, resolution of this discrepancy is immaterial to the resolution of Defendants' motion.

shortly after, attempted to break away from the officers, causing the officers to take Plaintiff to the ground for a second time. *Id.* During this second altercation, Plaintiff hit his head on the floor, causing a "minor cut" near his eye. *Id.*; Doc. #16-3 at ¶ 12–13.

Following the second take-down, the officers elected to carry Plaintiff to lockdown. Doc. #16-1 at ¶ 4. While being carried, Plaintiff began to kick at the officers, causing the officers to "nearly" drop Plaintiff. *Id.* As a result, "the [J]ail called for transportation to take [Plaintiff] to get stitches …." Doc. #16-1 at ¶ 5. Plaintiff was taken to the emergency room where he received treatment for the cut. Doc. #16-3 at ¶ 14.

When Plaintiff returned from the emergency room, he again refused to go to confinement. *Id.* at ¶ 15; Doc. #16-1 at ¶ 5. At this point, Plaintiff, whose handcuffs had been removed by Jackson,[7] "broke away [and began] running down the hall, unrestrained, towards the sally port." Doc. #16-1 at ¶ 5. While running, Plaintiff was taken to the ground by Beasley, Jackson, and Elmore. *Id.* Once on the ground, Plaintiff began beating his head against the floor and spitting at the officers. *Id.*; Doc. #16-3 at ¶ 17–18. In order to prevent Plaintiff from hitting his head, the officers attempted to hold Plaintiff's head against the floor. Doc. #16-1 at ¶ 5. Additionally, the officers applied a "spit mask" to Plaintiff, who attempted to bite the officers during this process. *Id.*; Doc. #16-3 at ¶ 19–20. Plaintiff then attempted to bite the screen on the mask and, once again, refused to walk to lockdown. Doc. #16-1 at ¶ 5. Thus, Plaintiff was carried to lockdown. *Id.*

**IV**
**Procedural History**

On April 15, 2013, Plaintiff filed a "Complaint for Damages" in the Circuit Court of Coahoma County, Mississippi. Doc. #3-2. The complaint, which named Beasley, Jones, and

---

[7] Beasley referred to Jackson's decision to remove Plaintiff's handcuffs as a "mistake." Doc. #16-1 at ¶ 5.

Coahoma County as Defendants, sought $300,000 for an unspecified cause of action arising from the October 31, 2012, incident. *Id*. On May 15, 2014, Plaintiff filed an amended complaint raising claims under 42 U.S.C. § 1983 and the Mississippi Tort Claims Act. *See* Doc. #2. In his amended complaint, Plaintiff alleges that he: (1) was subjected to civil assault and battery; (2) deprived of "the right not to be placed in lock down with out [sic] due process of law; and (3) deprived of "the right to be free from excessive use of force by persons acting under color of state law." *Id*. at ¶¶ 28, 39.

On May 14, 2014, Defendants, citing the existence of federal question jurisdiction, removed the action to this Court. Doc. #1. On October 8, 2014, Defendants filed a motion for summary judgment seeking "judgment as a matter of law as to all claims brought against them." Doc. #15. The following day, U.S. Magistrate Judge Jane Virden, citing the fact that Defendants' motion raised a defense of qualified immunity, stayed all discovery not related to the qualified immunity issue pending a ruling on the motion. Doc. #17.

Plaintiff did not respond to the motion for summary judgment within the time allowed. *See* L.U. Civ. R. 7(b)(4); Fed. R. Civ. P. 6(d). Rather, on November 8, 2014, nearly two weeks after the expiration of the deadline to respond, Plaintiff filed a "Motion for Enlargement of Time in Which to File Memorandum in Opposition to Defendant's [sic] Motion for Summary Judgment." Doc. #18. The motion, which in contravention of the Local Rules of this Court did not represent whether it was opposed, sought "an additional fifteen (15) days in which to respond to [the motion for summary judgment]." *Id*. As justification for the requested relief, Plaintiff represented that he was recently found guilty of murder and had been unable to communicate with his counsel. *Id*.

Defendants did not respond to Plaintiff's extension motion within the time allowed. At 10:09 a.m. on November 26, 2014, this Court entered an order stating:

> the motion for extension does not specify whether it seeks an additional fifteen days from October 27, 2014, the original due date; or November 8, 2014, the date the motion for extension was filed. Regardless, Plaintiff has failed to act within either period. Nevertheless, out of an abundance of caution, and given that no opposition to the extension has been filed by Defendants, the Court will **GRANT** the motion for extension … and extend the time period for Plaintiff to respond to the motion for summary judgment through and until November 26, 2014.

Doc. #19.

Notwithstanding the clear direction of this Court, Plaintiff did not file a response until November 30, 2014. Doc. #20; Doc. #21. Beyond being untimely, the response, which does not include a single piece of evidence, contains numerous unsupported statements of fact. *See* Doc. #20 at 4. Where factual statements are buttressed by a citation, Plaintiff cites only to his amended complaint. *See Id.* at 2.

On July 6, 2015, the parties submitted a joint pretrial order to this Court. The pretrial order, which was entered on July 13, 2015, provides, in relevant part:

> 3. The pleadings are amended to conform to this pretrial order.

> 4. The following claims (including claims stated in the complaint, counterclaims, crossclaims, third-party claims, etc.) have been filed:

>> 42 U.S.C. § 1983 (This claim is for excessive force.), and under Mississippi common law for intentional infliction of emotional distress, assault and battery.

Doc. #27 at 2. No other claim by Plaintiff was included in the pretrial order.

## V
## Plaintiff's Summary Judgment Response

As recounted above, in the course of submitting his response to the motion for summary judgment, Plaintiff: (1) missed his initial deadline; (2) filed an after-the-fact motion for

extension; (3) failed to file the response within the extended timeframe sought in the motion for extension; (4) failed to file the response within an extended timeframe granted sua sponte by the Court; and (5) ultimately, filed the response after the relevant deadline without seeking leave to do so. To date, Plaintiff has not moved to extend the response deadline to the date of the actual filing of his summary judgment response.

In the course of managing its docket, a court may strike or decline to consider documents filed out of time. *See Rashid v. Delta State University*, __ F.R.D. __, 2015 WL 1774416, at *3–4 (N.D. Miss. Apr. 17, 2015) (collecting authorities). Accordingly, where a non-moving party files an out-of-time response to a motion for summary judgment, the court may strike the untimely document, even where the party has sought an after-the-fact extension. *Id.*

Here, unlike in *Rashid*, there has been no request for an after-the-fact extension. Accordingly, the Court is left with an untimely response which was filed after a sua sponte extension. Under these circumstances, the Court will strike, and declines to consider, Plaintiff's response in opposition to the motion for summary judgment.[8] *Id.*

## VI
## Analysis

Although the language of the complaint is somewhat unclear, it appears that Plaintiff asserts the following claims: (1) a § 1983 claim against all defendants for violation of his Fourteenth Amendment rights "not to be placed in lock down with out due process of law [and] to be free from excessive use of force by persons acting under color of state law" (Count I), Doc. #2 at ¶ 28; (2) a § 1983 claim against "Defendant Charles Jones, Sheriff of Coahoma County …

---

[8] In reaching this conclusion, the Court notes that, while a "district court may not grant a motion for summary judgment merely because it is unopposed … a failure to oppose a motion for summary judgment does not relieve a plaintiff of his burden to point to genuine issues of material fact." *McNair v. Mississippi*, 43 F.Supp.3d 679, 684 n.3 (N.D. Miss. 2014) (citing *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010), and *Sangi v. Fairbanks Capital Corp.*, 219 Fed. App'x 359, 361–62 (5th Cir. 2007)). The Court also notes that, given the deficiencies of the response, consideration of the document would not have altered the conclusion of this opinion.

in his capacity of Sheriff of Coahoma County" for violation of "the rights of Plaintiff to be free from excessive force and unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States in placing Plaintiff in lock down without due process of law, and the right to a hearing, and not being informed of the length of his stay in lock down as a result of being falsely accused of causing and/or participating in the altercation despite being informed that Plaintiff had not been involved in a physical altercation" (Count II), Doc. #2 at ¶ 34; (3) a § 1983 claim against Jones and Coahoma County for violation of the right "to be free of excessive force and unreasonable [sic] under the Fourteenth Amendments [sic] to the Constitution of the United States" (Count III), Doc. #2 at ¶ 37; (4) an intentional infliction of emotional distress claim (Count IV);[9] and (5) a civil assault and battery claim brought against all defendants (Count V), Doc. #2 at ¶¶ 39–42.

While the caption of the complaint lists Beasley and Jones as defendants in their individual and official capacities, in each claim, with the exception of Count II, Plaintiff has failed to specify whether the cause of action is brought against the specific defendant in his individual or official capacity. In the absence of any evidence to the contrary, the Court, in deciding the motion for summary judgment, presumes that, unless stated otherwise, the causes of action against Beasley and Jones are brought in both individual and official capacities.[10] *See Valdez v. City of New York*, No. 11 Civ. 05194, 2013 WL 8642169, at *16 n.14 (S.D.N.Y. Sep. 3, 2013) ("Although, in each count against Taylor, Plaintiff does not actually specify whether he

---

[9] Although the intentional infliction of emotional distress claim is not enumerated as a specific count, the claim is clearly asserted in the amended complaint. *See* Doc. #2 at 1. The amended complaint does not contain a designated Count IV but proceeds from Count III to Count V.

[10] "In the Fifth Circuit … if it is not clear from the allegations of the complaint whether a defendant has been sued in his official or individual capacity, the court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued." *Senu-Oke v. Jackson State Univ.*, 521 F.Supp.2d 551, 556 (S.D. Miss. 2007) (citations omitted). The Court is skeptical of whether such an inquiry is necessary where a complaint, at least in the caption, specifically names defendants in both capacities. However, since neither party has addressed this issue, the precise nature of Plaintiffs' claims will be left for a later day.

is seeking relief from Taylor in his individual or official capacity, Plaintiff has named all of the Individual Defendants in both their individual and official capacities, in the caption of his Third Amended Complaint.").

In their memorandum supporting the motion for summary judgment, Defendants argue that summary judgment is warranted on all claims based on the deemed admissions and the factual record as a whole. Specifically, Defendants argue that Beasley and Thompson are entitled to summary judgment on the basis of qualified immunity and that Coahoma County is entitled to summary judgment because Plaintiff cannot establish the requirements for municipal liability. Doc. #16 at 9–18.

### A. Due Process Claims Based on Placement in Lockdown

As an initial matter, "[i]t is well settled that 'once the pretrial order is entered, it controls the course and scope of the proceedings under Federal Rule of Civil Procedure 16(e), and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint.'" *In re Katrina Canal Breaches Litig.*, 309 Fed. App'x 836, 838 (5th Cir. 2009) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998)). As quoted above, the controlling pretrial order in this case omitted the claim that Plaintiff's placement in lockdown constituted an independent violation of due process (separate from his excessive force claim). Accordingly, such claim is deemed waived. *Capece*, 141 F.3d at 206; *see also Garden City Boxing Club, Inc. v. Johnson*, 552 F.Supp.2d 611, 618–19 (N.D. Tex. 2008) (in order on motion for summary judgment, finding claim waived based on claim's omission from pretrial order).

### B. Qualified Immunity for Beasley

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether a government official is entitled to qualified immunity for an alleged constitutional violation, [courts] conduct [the] two-step analysis of *Saucier v. Katz*, 533 U.S. 194 (2001)." *Lytle*, 560 F.3d at 409 (internal citations omitted). First, the Court must "ask the threshold constitutional violation question of whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right." *Id.* at 409–10. If there was no constitutional violation, the "inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Id.* If, however, the officer violated a constitutional right, the Court must "ask the 'qualified immunity question' of whether the right was clearly established at the time of the conduct." *Id.*

### 1. Constitutional Violation

Plaintiff has alleged that Beasley violated Plaintiff's Fourteenth Amendment right to be free from excessive force. Doc. #2 at ¶¶ 27–31.

For years, courts in the Fifth Circuit have followed the rule that, "where a pretrial detainee is allegedly the victim of a detention officer's use of excessive force, as explained in *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993), … such a claim is subject to the same analysis as a convicted prisoner's claim for use of excessive force under the Eighth Amendment."[11] *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 477 (5th Cir. 2014) (footnote omitted). Under this standard, "a constitutional violation occurs where a detention officer uses force maliciously and sadistically for the very purpose of causing harm to the pretrial detainee [or prisoner], rather than in a good faith effort to maintain or restore discipline." *Id.* (internal

---

[11] The evidentiary record does not reveal whether, at the time of the incident, Plaintiff was a pretrial detainee or convicted prisoner. Insofar as the amended complaint has alleged a claim under the Fourteenth Amendment, the Court, viewing the record in the light most favorable to Plaintiff, will assume that Plaintiff was a pretrial detainee.

quotation marks omitted). In answering the question of whether force was used maliciously or sadistically, the Fifth Circuit has held:

> The Supreme Court's decision in *Hudson* [*v. McMillian*, 503 U.S. 1, 7 (1992),] instructs courts to consider a number of factors when evaluating an excessive force claim. These factors include the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Id*. (internal quotation marks omitted). The Supreme Court noted that the enumerated factors should be used "[i]n determining whether the use of force was wanton and unnecessary" and that a court should consider whether "such wantonness with respect to the unjustified infliction of harm [was] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 7. Thus, while the Eighth Amendment and Fourteenth Amendment inquiries long centered on a subjective inquiry, the Fifth Circuit (and the Supreme Court) have applied objective criteria in conducting the relevant analysis.

Last month, the United States Supreme Court, noting that "pretrial detainees (unlike convicted prisoners), cannot be punished at all, much less 'maliciously and sadistically'" held "that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kinsley v. Hendrickson*, __ S.Ct. __, 2015 WL 2473447, at *6–8 (June 22, 2015). Therefore, "in the absence of an expressed intent to punish, a pretrial detainee can … prevail [on an excessive force claim] by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id*. at *6 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)).

"[I]t is … well-settled law that a district court may recognize when a precedent has been explicitly or implicitly overruled by a subsequent Supreme Court decision. In that circumstance, the District Judge is free to disregard circuit precedent that is contrary to the rule pronounced by

the court possessing final authority to decide that particular question of law." *Does 1–7 v. Round Rock Indep. Sch. Dist.*, 540 F.Supp.2d 735, 749 (W.D. Tex. 2007) (internal citations and quotation marks omitted). When making this determination, "the question to ask is whether the holding … of the Supreme Court can be squared with the holding … of the Court of Appeals." *Id.* (quoting *EEOC v. Sidley Austin Brown & Wood LLP*, 406 F.Supp.2d 991, 996 (N.D. Ill. 2005), *aff'd,* 437 F.3d 695, 697 (7th Cir. 2006).

In the approximately three weeks since *Kingsley* was decided, only one court in this circuit has addressed the Supreme Court's *Kingsley* opinion's impact on a Fourteenth Amendment excessive force claim in the Fifth Circuit. In *Clark v. Anderson*, a Texas District Court followed the Fifth Circuit rule that Fourteenth and Eighth Amendment claims are analyzed under the same framework, although it allowed that "this holding is called into question by the Supreme Court's recent decision in *Kingsley* …." No. 4:15-cv-360, 2015 WL 3960886, at *3, 3 n.3 (N.D. Tex. June 29, 2015). While *Clark* stopped short of recognizing that *Kingsley* overruled the *Kitchen* and *Valencia* line of cases, a reading of *Kingsley* compels such a conclusion.

*Kingsley* held that Fourteenth Amendment claims, unlike Eighth Amendment claims, must be decided under an objective standard. 2015 WL 2473447 at *6. *Kitchen* and *Valencia* held that Fourteenth Amendment claims, like Eighth Amendment claims, must be decided under a subjective standard. *Kitchen*, 759 F.3d at 477. These holdings cannot be squared. Accordingly, this Court follows the Supreme Court's direction and holds that Plaintiff's Fourteenth Amendment claim must be evaluated under an objective standard – that is, the Court must ask whether, from an objective point of view, Beasley's actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose. *Kingsley*, 2015 WL 2473447 at *6.

There can be no serious dispute that Beasley's use of force during the incident was rationally related to the legitimate, non-punitive governmental purpose of moving to lockdown an inmate involved in a physical altercation, pending the completion of an investigation. Accordingly, the question becomes whether Beasley's use of force was excessive in relation to that purpose. In answering this question, the Court turns to the *Hudson* inquiry, which has been used for nearly twenty-five years to determine whether a corrections officer's use of force was "wanton and unnecessary," that is, whether force was excessive. *Hudson*, 503 U.S. at 7. However, in a departure from the pre-*Kingsley* jurisprudence, the Court need only ask whether the force was unnecessary – not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim.

### a. Factor #1: Extent of Injury

Here, the evidence shows that during the "second take down," Plaintiff suffered a "minor cut" near his eye. Doc. #16-1 at ¶ 4; *see also* Doc. #16-3 at 8. There is no indication Plaintiff suffered injury as a result of any other use of force. This only injury of record weighs against a finding of excess force. *See Renthrope v. Tofton*, No. Civ. A. 05-1390, 2007 WL 37999, at *5 n.6 (W.D. La. Jan 4. 2007) ("the absence of any sign of injury other than a minor cut" weighed in favor of officer under *Hudson*).

### b. Factor #2: Need for Application of Force

The undisputed evidence and admissions show that force was only administered after Plaintiff refused to follow orders, and later, after Plaintiff attempted to struggle, tried to escape, and then tried to assault the officers. Each of these acts justified the use of force. *See Martin v. Seal*, No. 11-726, 2014 WL 2890125, at *4 (E.D. La. June 25, 2014) ("[T]he use of force may be appropriate to restore discipline [and] it is undisputed that plaintiff was refusing to follow

orders."); *Magana v. Strickland*, No. H-08-2899, 2010 WL 3660919, at *9 (S.D. Tex. Sep. 20, 2010) ("Magana resisted the officers' efforts to escort him from the infirmary. There is evidence of a need for force."); *Minix v. Blevins*, No. 6:06-cv-306, 2007 WL 1217883, at *25 (E.D. Tex. Apr. 23, 2007) ("[T]he Fifth Circuit has held that the use of tear gas, when reasonably necessary to prevent …. [e]scapes … does not constitute cruel and inhuman punishment.") (citing *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975)). Accordingly, the second factor weighs against a finding of excessive force.

### c. Factor #3: Relationship Between Need for and Amount of Force Used

The undisputed facts establish that Beasley and the other officers: (1) took Plaintiff to the ground after he loudly refused repeated orders to go to lockdown; (2) handcuffed Plaintiff after he struggled; (3) took Plaintiff to the ground after he continued to struggle and attempted to run from the officers; (4) attempted to carry Plaintiff to lockdown after he attempted to run; (5) took Plaintiff to the ground after he ran unrestrained toward a door; (6) held Plaintiff's head against the floor after Plaintiff repeatedly banged his head against the ground; (7) applied a spit mask after Plaintiff attempted to spit at and bite the officers; and (8) finally carried Plaintiff to lockdown. All of these actions represent a reasonable relationship between the need for and amount of force used. *See Stevenson v. Vinson*, No. 9:09-cv-39, 2009 WL 5062068, at *8 (E.D. Tex. Dec. 15, 2009) ("A five man team had to be assembled due to his resistance. They had to subdue him on the floor to conduct the search, and he persisted in struggling. His injuries were consistent with being forcibly placed on the floor. The extent of the force used was directly related to the degree of resistance caused by the Plaintiff."). Accordingly, the third factor weighs against the finding of a constitutional violation.

#### d.   Factor #4:  Threat Reasonably Perceived by Officers

It is undisputed that, prior to being taken down the first time, Plaintiff refused orders from the officers present in his cell and explicitly threatened such officers.  Plaintiff next engaged in a physical struggle with the officers, attempted to kick the officers, and then attempted to bite and spit at the officers.  Each of these actions posed an objectively reasonable threat to Beasley and the officers.  *See Rios v. McBain*, No. 5:04-cv-84, 2005 WL 1026023, at *5 (E.D. Tex. Mar. 21, 2005) (fourth factor weighed in favor of officers where Plaintiff "posed a threat to institutional order and security because he was refusing to comply with regulations and was keeping … handcuffs rather than allowing the officers to remove them"); *see also Thibodeaux v. Cantrell*, No. 6:12-cv-362, 2013 WL 5665458, at *5 (E.D. Tex. Oct. 17, 2013) ("Thibodeaux's testimony shows that he was verbally aggressive and then refused orders to submit to handcuffs.  A reasonable prison official would perceive that such behavior posed a significant threat to the security and orderly operations of a prison institution ….  Thibodeaux's action in biting Cantrell, potentially exposing the officer to HIV infection, plainly posed a substantial risk to prison security.  The fourth Hudson factor weighs against Thibodeaux.") (internal citations omitted).  However, the Court is skeptical of whether the second and third takedowns, which were precipitated by Plaintiff trying to run from the officers, were supported by a reasonable perception of threat.  Accordingly, the fourth factor weighs in favor of Plaintiff as to the second and third takedowns, and against Plaintiff as to the remaining uses of force.

#### e.   Factor #5:   Efforts Made to Temper Severity of Forceful Response

It is undisputed that, prior to the first takedown, Beasley and the other officers gave Plaintiff repeated verbal orders to move to lockdown.  The issuance of verbal orders constitutes an effort made to temper the severity of a forceful response.  *See Magana*, 2010 WL 3660919, at

*8 ("The summary judgment evidence shows that the defendants took steps to temper the severity of the response. Guards ordered the inmates to lie down on their bunks."). As to the remaining actions, the record does not reflect any efforts to temper the severity of the force. However, the minor nature of Plaintiff's injuries "indicat[es] that the response was tempered to some extent." *Thibodeaux*, 2013 WL 5665458, at *5. This is particularly true in light of Plaintiff's near-constant recalcitrance. *See Irvin v. Grissom*, No. 9:07-cv-254, 2010 WL 547328, at *7 (E.D. Tex. Feb. 9, 2010) (fifth factor weighed in favor of defendants who, in process of transporting resisting prisoner to lockdown, took prisoner to ground, handcuffed prisoner, and then picked him up and carried him to lockdown). At most, the fifth factor weighs "slightly" in Plaintiff's favor as to the remaining uses of force. *Thibdodeaux*, 2013 WL 5665458, at *5.

### f. Balancing

Balancing the factors above, the Court concludes that there is no genuine issue of material fact as to whether any of the uses of force were excessive. Accordingly, Plaintiff's Fourteenth Amendment right to be free from excessive force was not violated and his § 1983 claim against Beasley for such a violation must fail.

### 2. Qualified Immunity

Having determined that Plaintiff has not shown a violation of a constitutional right, the Court need not consider whether Beasley's actions are entitled to qualified immunity.

### C. Qualified Immunity for Jones

Plaintiff asserts his § 1983 action against Jones based on Jones' alleged failure to train and/or supervise the Jail employees. Doc. #2 at ¶¶ 32–38. A plaintiff may bring a § 1983 claim based on a municipal official's failure to adequately hire, train, or supervise employees if such failure amounts to deliberate indifference to the rights of others. *See Goodman v. Harris Cnty.*,

571 F.3d 388, 395 (5th Cir. 2009) (training and supervising); *see also Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (hiring). However, "a supervisor cannot be liable under § 1983, where … there is no underlying constitutional violation." *Montes v. Ransom*, 219 Fed. App'x 378, 381 (5th Cir. 2007) (citing *Rios v. City of Del Rio*, 444 F.3d 417, 425–26 (5th Cir. 2006)); *see also Manton v. Strain*, No. 09-0339, 2010 WL 4364552, at *7 (E.D. La. Oct. 21, 2010) ("Absent the existence of a predicate constitutional violation, Strain cannot be held liable either individually or in his official capacity for the acts of his subordinates.") (collecting cases). For the reasons discussed above, the Court concludes that Plaintiff cannot show a predicate constitutional violation and that, therefore, summary judgment in favor of Jones must be granted on the § 1983 claims brought against him in his individual capacity. *Id.*

### D. Summary Judgment for Coahoma County

Section 1983 provides for liability against a municipality for causing "a constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (internal quotation marks omitted). As with supervisory liability, "[a] municipality cannot be held liable under § 1983 if there is no underlying constitutional violation." *Hale v. Bexar Cnty.*, 342 Fed. App'x 921, 925 (5th Cir. 2009) (citing *Rios*, 444 F.3d at 426). Because Plaintiff cannot establish an underlying constitutional violation, Coahoma County is entitled to summary judgment on the § 1983 claims. *Id.* For the same reason, summary judgment is also warranted on the claims against Beasley and Jones in their official capacities. *See Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 716 (N.D. Tex. 1998) ("Official capacity suits are another way of pleading an action against an entity of which an officer is an agent.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

### E.  Summary

Because Plaintiff cannot show a constitutional violation, summary judgment is granted in favor of all Defendants on the § 1983 claims.

## VII
## State Law Claims

Having dismissed all federal claims, this Court is divested of federal question jurisdiction. In such a situation, "the court must exercise its discretion whether to exercise supplemental jurisdiction" pursuant to 28 U.S.C. § 1367(c)(3).  *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).  28 U.S.C. § 1367(c)(3) provides:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Courts in the Fifth Circuit treat these four categories as "statutory factors" to consider when evaluating supplemental jurisdiction.  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011).  Additionally, the Fifth Circuit requires consideration of "common law factors [of] judicial economy, convenience, fairness, and comity."  *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

When a district court dismisses all federal claims before trial, "the general rule is to dismiss any pendent claims."  *Bass*, 180 F.3d at 246.  However, the Fifth Circuit "has consistently held that declining supplemental jurisdiction following a significant investment of judicial resources in the litigation constitutes an abuse of discretion."  *Seals v. Mississippi*, 998 F.Supp.2d 509, 527 (N.D. Miss. 2014) (citing *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)).

Here, while Plaintiff's amended complaint does not involve complex issues of state law, the remaining factors support remand. The second statutory law factor weighs in favor of remand because the state law claims predominate over the non-existent federal law claims. The third statutory factor weighs in favor of remand because the federal claims were dismissed by this order. Finally, as explained below, the fourth factor, which incorporates the common law factors, weighs in favor of remand. *See Enochs*, 641 F.3d at 159 ("The fourth [statutory] factor also favors remand, as the heavy balance of the common law factors in favor of remand constitutes another compelling reason to decline jurisdiction.").

Turning to the common law factors, the judicial economy factor weighs in favor of remand because "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the ... consideration of the ... state law claims (or to any claims)."[12] *Id.* Next, neither party has offered any argument as to convenience. Accordingly, the Court deems this factor neutral. The third common law factor also weighs in favor of remand because "it [is] certainly fair to have … the purely … state law claims heard in … state court …." *Id.* Finally, insofar as federal courts are "not as well equipped for determinations of state law as are state courts," the fourth common law factor of comity is served by remand. *Id.*; *see also Diaz v. Estate of Lampton*, No. 3:09–cv–324, 2013 WL 3213087, at *16 (S.D. Miss. June 26, 2013) (dismissing state law claims "without prejudice so that a state court of competent jurisdiction may resolve them").

---

[12] The docket in this federal court consists of only twenty-six entries. The majority of the docket entries reflecting actions taken by this Court before this opinion pertain to scheduling or other procedural matters. *See, e.g.,* Doc. #5 (initial order); Doc. #10, #11 (case management); Docs. ##12–14 (trial and pretrial conference notices and matters); Doc. #17 (stay order); Doc. #19 (extension order); Doc. #23, #26 (status and pretrial conferences).

Upon consideration of the statutory and common law factors, the Court will follow the Fifth Circuit's general rule and decline to exercise supplemental jurisdiction over the state law claims. Accordingly, this matter must be remanded to the Circuit Court of Coahoma County.

## VIII
## Conclusion

For the reasons set forth above, the Court: (1) **STRIKES** Plaintiff's response [21] opposing Defendant's motion for summary judgment; (2) **STRIKES** Plaintiff's responsive memorandum [20] opposing Defendant's motion for summary judgment; and (3) **GRANTS in Part and DENIES in Part** Defendants' motion for summary judgment [15]. The motion for summary judgment is GRANTED as to Plaintiff's § 1983 claims, and is DENIED as to Plaintiff's state law claims, over which this Court has declined to exercise its supplemental jurisdiction. This matter is **REMANDED** to the Circuit Court of Coahoma County.

**SO ORDERED**, this 13th day of July, 2015.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**